UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION


UNITED STATES OF AMERICA,      .    CASE NO. 3:23-CR-029-29
                               .
         PLAINTIFF,            .
                               .
    V.                         .    GALVESTON, TEXAS
                               .    FRIDAY, APRIL 5, 2024
PATSAMONG SOMKONGMANY,         .    11:00 A.M. TO 11:28 A.M.
                               .
         DEFENDANT.           .
. . . . . . . . . . . . . . . .


DETENTION HEARING

SOME PARTIES APPEARING VIA ZOOM

BEFORE THE HONORABLE ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:                     SEE NEXT PAGE

ELECTRONIC RECORDING OFFICER: ANDY GOULD

CASE MANAGER:                    RUBEN CASTRO

OFFICIAL INTERPETER:             NONE PRESENT


TRANSCRIPTION SERVICE BY:

TRINITY TRANSCRIPTION SERVICES
1081 Main Street
Surgoinsville, TN 37873
281-782-0802

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION


UNITED STATES OF AMERICA,     .     CASE NO. 3:23-CR-029-29
                              .
             PLAINTIFF,     .
                              .
        V.              .     GALVESTON, TEXAS
                              .     FRIDAY, APRIL 5, 2024
PATSAMONG SOMKONGMANY,     .     11:00 A.M. TO 11:28 A.M.
                              .
            DEFENDANT.     .
. . . . . . . . . . . . . . . .

DETENTION HEARING

SOME PARTIES APPEARING VIA ZOOM

BEFORE THE HONORABLE ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

Appearances:

**For the GOVERNMENT:**          **KENNETH A. CUSICK, ESQ.**
                            Assistant United States Attorney
                            Office of the United States
                              Attorney
                            601 25TH Street, Room 227
                            Galveston, TX 77550

**DEFENDANT SOMKONGMANY:**     **ALEJANDRO MACIAS, ESQ.**
                            Law Office of Alejandro
                            Macias, P.C.
                            5300 Memorial Drive, Suite 1000
                            Houston, TX 77007

Transcription Service:        Cheryl L. Battaglia
                            Trinity Transcription Services
                            1081 Main Street
                            Surgoinsville, TN 37873

1          **Galveston, Texas; Friday, April 5, 2024; 11:00 a.m.**

2          **(Some parties appearing via Zoom.)**

3              **UNITED STATES MARSHAL:**  All rise.

4          **(Pause in the proceeding.)**

5              **THE COURT:**  Please be seated.

6          **(Pause in the proceeding.)**

7              **THE COURT:**  Make sure Mr. Cusick can see me.  Oh,

8      yeah.  There we go.

9              Good morning, everyone.  We are here today on *Case*

10     *3:23-CR-29-29, United States versus Patsamong Somkongmany.*

11             I need introductions of counsel.  First I'll start on

12     Zoom.  Counsel for the Government.

13             **MR. CUSICK:**  Kenneth Cusick for the United States.

14     Good morning, your Honor.

15             **THE COURT:**  Good morning, Mr. Cusick.  And for the

16     Defendants?

17             **MR. MACIAS:**  Alejandro Macias for Mr. Somkongmany,

18     your Honor.

19             **THE COURT:**  I see both of you here today.

20             Okay.  We -- we sort of rescheduled to take a look at

21     the issues and -- and reconvene the detention hearing.  And I

22     know one of the things that I wanted to make sure is the

23     Defendant's sister is here.  That she's here --

24             **MR. MACIAS:**  She's here, Judge.  She's in the third

25     row.

2

1      **THE COURT:**  Perfect.  Good to see you.  And I think

2  that's Miss Bunwat Jaelo Somkongmany?  Did I correctly?

3      **(No audible response.)**

4      **THE COURT:**  Okay.  Let me start off

5  with -- I'll -- I'll actually taken a look at -- at the issue

6  that we raised and we discussed.  And, you know, long story

7  short.

8      The Defendant has been in the United States for I

9  think it's almost 44 years or so.  And this is because I've

10  gone with -- and Mr. Cusick, while I appreciate it, hey it's

11  not that he is necessarily a risk of flight.  The reason

12  concern that the Government has here is that there is an ICE

13  detainer.   And if ICE decided to detain and remove the

14  Defendant to Laos, then it would obviously make the Defendant

15  unavailable for trial.  Even though, the Defendant has been in

16  the United States, wants to remain in the United States, and

17  the Defendant for bail if there are conditions, or combination

18  of conditions, that I could post that alleviate the risk of

19  flight.

20      I've taken a very close look at the case law.  It is,

21  just an aside, it's very interesting some of these

22  don't -- things don't come up.

23      I mean, it's been six years on the bench, I've never

24  had this issue come up.  I've actually taken a look at it.  I'm

25  actually going to write a sort of opinion on this.  I think

3

1  it's sort of helpful to -- cause it's done all over the

2  country, but nothing in the Southern District of Texas.

3        Long story short, more than early next week, the long

4  story short.  I think it's clear after reviewing the case law

5  that the specter of a Defendant's removal from the United

6  States by ICE is not enough taken alone to establish that

7  there's a serious risk that the Defendant will flee.

8        As a result, I am going to order or put in place

9  conditions that, for the Defendant to posit.  I will just say,

10  it's particularly interesting.  According to -- to my research,

11  for what it's worth, I think there are, at least as of November

12  2022, there were 4600 people, according to ICE that were Laos

13  citizens who had detainers in the United States.  In 2022, 4

14  people were removed.  And in 2023, 1 person was removed.

15        So --

16    **(Pause in the proceeding.)**

17        **THE COURT:**  It's now my decision to decide what ICE

18  is -- you know, they make that decision.  And candidly, you

19  know, it doesn't matter, you know, whether ICE would or would

20  not.  That's -- the -- the question is, is there a risk of

21  flight.  And more importantly, are there any conditions, or

22  combinations, that I could impose to relieve that risk.

23        So as a result, Mr. Somkongmany, I am going to impose

24  conditions on you to have you released is where we got to.

25  However, you need to follow these conditions that I'm going to

4

1  impose.

2       And if you violate any of these conditions, you

3  should fully expect to be back here in front of me, and that

4  you should be held in custody pending trial.

5       And as I doesn't want it, I don't want it, I know you

6  family doesn't want it, and I know the Government doesn't want

7  it.

8       Do you understand that, sir?

9       **DEFENDANT SOMKONGMANY:**  Yes, sir.

10      **THE COURT:**  Okay.  Let me go over those conditions

11 with you.  And let me have a word --

12      **(Pause in the proceeding.)**

13      **THE COURT:**  What is your view, Mr. Cusick?  And I

14 understand, sir, what is your -- what conditions do you think I

15 should impose?

16      **(Pause in the proceeding.)**

17      **MR. CUSICK:**  Your Honor, it would be all the standard

18 conditions that the Bail Reform Act lists out in the statute.

19 That is everything is put routinely -- put on adapt the

20 conditions, home detention and electronic monitoring.

21      After you do set out what the conditions are and if

22 it's his there's an order that you're going to release him on

23 it, I would like to make a record.  Because I do plan to file a

24 motion to stay and appeal this to the District Court.

25      And I would like to clarify for the record my basis

1    for asking for detention.

2            **THE COURT:**  Sure.  Well -- what did -- what do

3    you -- well, if you're asking for detention, we'll we're going

4    to have detention.

5            My understanding was you were not requesting

6    detention.  If you don't want detention, that's fine.  Let's

7    have a detention hearing.

8            Well, you can't appeal a decision of mine if we don't

9    have a detention hearing.

10           **MR. CUSICK:**  We did have a detention hearing, your

11   Honor.  I put Agent Emerson on and testified about what

12   Mr. Somkongmany did.  And they we made -- you began talking

13   about the issue.  And that's when we sort of got a roadblock

14   with this issue with the ICE detainer.

15           **THE COURT:**  Okay.  Well let me put it --

16           Is there anything else that either side wants?  I

17   think what happened is, when Agent Emerson testified, then we

18   started talking through the issues if I remember correctly.

19           **MR. CUSICK:**  Yes, your Honor.

20           **(Pause in the proceeding.)**

21           **MR. CUSICK:**  Just want to clarify for the record,

22   that that's why I was proceeding with a detention hearing.

23   There was this dilemma.

24           But since then I've also done some research on my

25   own.  And I find out that there is no shared treaty between the

6

1  United States and Laos such that if Mr. Somkongmany did make it

2  over there, go over there, we would not be able to extradite

3  him.

4      ERO and alone with ICE, at least in the Houston area,

5  is declaring that their policy is that they do not deport

6  people to Laos, despite the findings the Court was able to

7  discover.  So maybe that's just a localized thing.

8      But furthermore, without the issue of the ICE

9  detainer from the Pretrial Services Report, since

10 Mr. Somkongmany has been in the country so long, all we show is

11 employment history for the last five months.

12      So that concerns the Government, too.  Cause that's a

13 lot of discrepancies.

14      **THE COURT:**  Say -- say it -- say that again?

15      **MR. CUSICK:**  In the Pretrial Services Report, he

16 reports back in his employment with the last five months with

17 Hartz Chicken.  But we don't have a history since he's been

18 here his whole life, that's the only employment history we

19 have.  And the Government contends that's not the

20 (indiscernible).

21      The other part is, he has a lengthy criminal history.

22 But most of the stuff appears to be -- we can't determine if

23 there was no disposition.  We don't know what it is.  And so

24 the Government's concerned with that.

25      But first and foremost, on the back side of this

1   issue of the ICE detainer, while ICE may not deport

2   Mr. Somkongmany, he could still take flight.  And if he gets to

3   Laos, we will never see him again.  And we can't bring him back

4   over here.

5         It's interesting that his -- the person he delivered

6   the fentanyl to Houston with, he is, in fact, in Laos.  And so,

7   I know there's at least one person he would know if he escaped

8   and went to Laos.

9         And so the Government for those reasons, he's a risk

10  of flight, danger to the community.  And it's those things.

11  And so --

12        **THE COURT:**  Well hold on a second.  Let me just make

13  sure I understand.

14        When we had this hearing last week, you acknowledged

15  on the record that you had no concern about him being a risk of

16  flight.  Your only concern was that -- that ICE was going to

17  deport him.

18        **MR. CUSICK:**  Yes, your Honor.  The overriding concern

19  after that, I was more concerned about  whether ICE would

20  deport him, than I was with his personal circumstances.

21        **(Pause in the proceeding.)**

22        **THE COURT:**  Okay.  Okay.  Anything -- anything else

23  from the Government that the Government would like to add?

24        **MR. CUSICK:**  No, your Honor.

25        **THE COURT:**  Okay.  Mr. Macias, if I remember

1    correctly, and I might be wrong on this.

2             But I thought that Agent Emerson finished his

3    testimony.

4             **MR. MACIAS:**  That's my -- that's my understanding,

5    Judge.

6             **THE COURT:**  And then we sort of discussed these

7    issues.  So, I guess I will give you a full and fair

8    opportunity for -- for a record.  If there's anything that

9    the -- the Defendant would like to raise?

10            **MR. MACIAS:**  Your Honor, I would.  Now I mentioned

11   the plea amounts.  I think the standard is not whether

12   Mr. Somkongmany is a flight risk, but whether he's likely to

13   flee.

14            Okay.  I think there is no evidence, as you heard Mr.

15   Emerson -- Agent Emerson testify.  There's nothing about

16   failing to appear in any of the court pleading.  There's

17   nothing about failing to abide by his conditions of probation.

18   He's on probation.  There was nothing to -- to say that he

19   would violate his parole when he was paroled.  Or that any

20   conditions while he was on bond in Oklahoma.

21            So as far as his -- his -- his likeliness to flee,

22   why do you think the record is devoid of any information that

23   would suggest that Mr. Somkongmany is likely to flee the

24   jurisdiction of the Court.

25            Number two, Mr. Cusick just mentioned lack -- lack of

9

1    work history, and named his criminal history as being a

2    concern.  Again, I would -- I think those two, if you put

3    together here don't rise to the level of suggesting that

4    Mr. Somkongmany here a danger to him or others if he were to be

5    released.

6            His -- his mother is here.  His sister is here.  His

7    extended family is here in the United States in Houston.

8    Mr. Somkongmany has never left the United States, has no plans

9    to go back to Laos.  And whether another co-Defendant is in

10   Laos, is of no import as to Mr. Somkongmany.

11           So I would -- I would add that he be released as the

12   Bail Reform Act says for him to be released and suggest I don't

13   think the Government has met it's burden on either factor.

14   It's not showed him to be -- for him to be likely to flee or

15   that opportunity is in evidence that he -- there are no

16   conditions you could place upon him that would not address

17   whatever risk factor or danger factor there is for

18   Mr. Somkongmany.

19           Apologies as to be repetitious, your Honor.

20           **THE COURT:**  And let me ask you a question, if I may.

21           My understanding, correct me if I'm wrong,

22   Mr. Cusick, was that the Government's -- that this was a

23   question about the risk of flight.  It was not an argument on

24   danger to the community.  Am I wrong on that?

25           **MR. CUSICK:**  Yes, your Honor.  I mean, I'm not saying

1    that it's zero percent change.  But the overriding concern of

2    the Government is the risk of flight.

3         **THE COURT:**  And -- and the Government's position is

4    the reason he's a risk of flight is why?  Tell me again -- why?

5    Why is this individual, who's been in the United States since

6    1978, who has not been back to Laos since.  And he has -- he

7    has children who live in the United States with their

8    respective mothers.  He has a -- let me look at this Pretrial

9    Report here.

10        He has -- says he came to the United States from Laos

11   at the age of 3.  He lived in the Dallas, Texas area for 30

12   years, in Houston for 2 years, Oklahoma for 3 years before

13   returning to Houston in September of 2023.

14        Which by the way, is when his employment at Hartz

15   Chicken in Houston started.  And then there's two sisters, both

16   are U.S. citizens.  One resides in Texas.  And one who resides

17   in Connecticut.  And his mother, a permanent resident, resides

18   in the U.S.

19        Why is he a risk of flight?

20        **MR. CUSICK:**  Your Honor, because he's never faced a

21   ten to life drug charge before.  He Government considered his

22   case strong because he hand-delivered the fentanyl to

23   undercover agent Jane (phonetic) Barretson (phonetic) and,

24   therefore, that the sentenced to this maximum in this case.

25        Both counts in that indictment, he's facing more than

1    ten years which brings us the presumption.  And so these other

2    charges he's faced before, he's never faced this kind of a

3    punishment.

4         **THE COURT:**  Is it -- okay.  what else?

5         **(Pause in the proceeding.)**

6         **MR. CUSICK:**  And the risk is -- however the Court

7    views it, low or high, low obviously in the view of the Court.

8    But if he does disappear back to Laos, the Government will have

9    no ability to get him back here.

10         **THE COURT:**  And I just want to make sure I'm clear.

11         So the Government, the United States Attorney's

12    position is that any time a Defendant faces ten to life in a

13    case, that if they're from another country, that they should be

14    held in custody pending trial, cause they're a risk of flight?

15         **MR. CUSICK:**  Your Honor, the presumption -- one of

16    the presumption is right -- yes, in every case is what the

17    Defendant's obtained, because the risk is very high that

18    they're a -- they're a risk of flight and a danger to the

19    community, which *Backey* (phonetic) sets out.

20         That's just an added feature if they're here

21    illegally in the country, and that there's a detainer.  But

22    mainly that they're here illegally from another country.

23         **THE COURT:**  All right.  Let me ask another question.

24         The U.S. Attorney's position for the Southern

25    District of Texas is, any time a Defendant faces ten years to

12

```
 1   life, and they're here illegally, they are a risk of flight and
 2   should be detained.
 3            MR. CUSICK:  The Government will be seeking
 4   detention.  But it's a case-by-case, your Honor.  But yes,
 5   generally.
 6            THE COURT:  Well let me --
 7            MR. CUSICK:  -- (indiscernible - parties speaking
 8   concurrently).
 9            THE COURT:  Well let me try -- I understand.
10        How -- how did a case like -- why is it case-by-case.
11   And how in this case did this Defendant, this Defendant a risk
12   of flight?
13            MR. CUSICK:  Well one of the --
14            THE COURT:  Use another case.  Give -- give me an
15   example where an individual in the U.S. Attorney's view who is
16   a -- is -- is not here legally, facing ten to life, would ever,
17   ever be put on conditions of release.
18        (Pause in the proceeding.)
19            MR. CUSICK:  Well, as the Court well knows, from the
20   other co-Defendant in this case, it depends on what country
21   it -- it, for example, if they're from Mexico, we have an
22   extradition treaty.
23        If -- if the person might be here illegally and we
24   agreed to certain circumstances.  If they did disappear, we
25   still have the ability to go and try to get custody of that
```

1   person between the efforts of the Governments of Mexico and the

2   United States.

3          In this case, Laos, we have no treaty.  Therefore, he

4   disappears and goes to Laos, we have no ability to get him

5   back.

6          **THE COURT:**  Okay.

7      **(Pause in the proceeding.)**

8          **THE COURT:**  Anything further from Government or the

9   Defendants?

10          **MR. CUSICK:**  Not from the Government.

11          **MR. MACIAS:**  No, your Honor.

12          **THE COURT:**  Okay.  Mr. Somkongmany, as I was saying,

13   I am going to find that -- well let me make sure the record is

14   abundantly clear.

15          The Government in this case is seeking detention,

16   cause they do believe you are a risk of flight.  As I always

17   say at these hearings, the sole purpose of this hearing is to

18   determine whether you should be held in custody pending the

19   trial of this case.

20          You are innocent until proven guilty.  And nothing

21   that goes on this proceeding will be (indiscernible) and can't

22   say is intended to affect that presumption one way or that.

23          Our sole question is, should you be held in custody

24   pending the trial of this case.  And under the <u>Bail Reform Act</u>,

25   which is the law that is applied in this situation that sets

14

1   forth the conditions on which a Defendant should or should not

2   be released pending a trial in the case.

3          And what that law requires -- well first of all, it

4   explains that pretrial detention is an exceptional step.  It's

5   the exception rather than the rule.  And a Defendant must be

6   released prior to trial, unless I find there's no conditions,

7   or combination of conditions, exists which will reasonably

8   assure the appearance of the Defendant that the Government, as

9   it does here, seeks detention based on the risk of flight.  Or

10  reasonably assure the safety of any other person in the

11  community if the Government seeks detention based on danger to

12  the community.

13         And importantly, the Bail Reform Act requires that

14  the least restrictive conditions be imposed that are necessary

15  to provide those reasonable assurances.  But, if I cannot find

16  that there are conditions to reasonably assure the appearance

17  of the Defendant as required for the safety of persons in the

18  community, then I'm required to, under the Bail Reform Act, to

19  require that you be held in custody.

20         First and foremost, this is a presumption case.

21  Meaning, it is some type of crime that is alleged that there is

22  a presumption that you should be held in custody pending trial

23  in this case.

24         It is a rebuttal presumption.  And I find in this

25  case that the presumption is easily rebutted.  The Defendant

1    has been in the country 40 --

2        **(Pause in the proceeding.)**

3        **THE COURT:**  -- 46 years, has not been out of the

4    United States since then, has children, mother, siblings all in

5    the United States.

6        So the question then becomes, is there a risk of

7    flight or danger to the community.  As in terms of -- let me

8    start with danger to the community.

9        Government's right in seeking danger to the community

10   in this case for outside this, it's clear there are conditions,

11   and combination of conditions, that could be imposed to

12   alleviate any danger to the community.  So I do not think the

13   Government has met its burden with respect to that.

14       With respect to the question about a risk of flight,

15   the burden is Government has to, by a preponderance of

16   evidence, there are no conditions, or combinations of

17   conditions, that could insure you appearance at trial in this

18   case.

19       I do not believe the Government has met its burden in

20   this case.  And for all the reasons that I have said, that you

21   have been here a long time.  And, in fact, the Government has

22   acknowledged on the record that it is not concerned that you

23   are a risk of flight, or at least there are not conditions I

24   can impose.

25       The real concern is, hey, there's no extradition

1    treaty with Laos.  That if you disappear, if ICE picked you up,

2    that you could not come back.  And if you ended up in Laos, you

3    could not come back.

4           Under the case law, it is abundantly clear that is

5    not sufficient.  And -- and -- and I will make that -- as I

6    said earlier, I'm going to issue an opinion on this and will do

7    that ASAP to -- to set forth the law, the legal standard.

8           So you're going to be released pending trial in this

9    case.  You've got to follow these conditions.  If you violate

10   any of these conditions, you should fully understand to be held

11   in custody pending trial.

12          Here is the conditions that I'm going to impose upon

13   you, sir.  And let me --

14       **(Pause in the proceeding.)**

15       **THE COURT:**  -- pull up my reporters from the low

16   dispute screen.

17       **(Pause in the proceeding.)**

18       **THE COURT:**  First of all, there's an unsecured

19   $50,000 bond.  Which means, if you violate any of the

20   conditions that I'm going to go over, you could be responsible

21   paying up to $50,000.

22          In addition, you cannot violate any state, federal,

23   local law.  You cannot intimidate any witnesses.  You cannot

24   obstruct justice at all.

25       **(Pause in the proceeding.)**

1          **THE COURT:**  In addition, you obviously have to appear

2   in Court as required and surrender to serve any sentence

3   imposed.  I am going to require that you be required to report

4   to U.S. Pretrial Services.  You are to maintain, or actively

5   seek, full time, verifiable employment.

6          If you have a passport, you need to surrender that

7   immediately and obtain no further passport.

8   **(Pause in the proceeding.)**

9          **THE COURT:**  I'm going to require that you live with

10  your sister, Bounwat Jaelo Somkongmany, and will have you come

11  in -- in a minute and then I want to go over some instructions

12  with you.

13         Well actually, if you could come on up, please, we

14  can get you on the microphone real quick.

15  **(Pause in the proceeding.)**

16         **THE COURT:**  Could you please state your name?

17         **MS. SOMKONGMANY:**  Bounwat --

18         **THE COURT:**  Scoot the microphone down a little bit.

19         **MS. SOMKONGMANY:**  Bounwat Jaelo Somkongmany.

20         **THE COURT:**  Thank you for coming in, ma'am.

21         I requested you be here today because my plan is to

22  release your brother into your custody to live at your house

23  pending trial in this case.  Do you understand that?

24  **(No audible response.)**

25         **THE COURT:**  And that's okay with you.

1    **MS. SOMKONGMANY:**  Yes, sir.

2    **THE COURT:**  Okay.  Let me find out.

3    What is that address that you live at?

4    **MS. SOMKONGMANY:**  XXXX XXXXXX XXXXX.

5    **THE COURT:**  How do you spell that?

6    **MS. SOMKONGMANY:**  XXXXXXXX

7    **THE COURT:**  XXXXXXX Lane.

8    **MS. SOMKONGMANY:**  XXXXXXXX, Texas XXXXXX.

9    **(Pause in the proceeding.)**

10    **THE COURT:**  Okay.  And your phone number is?

11    **MS. SOMKONGMANY:**  XXX --

12    **THE COURT:**  Yeah.

13    **MS. SOMKONGMANY:**  XXX --

14    **THE COURT:**  Uh-huh.

15    **MS. SOMKONGMANY:**  XXXX.

16    **THE COURT:**  Okay.  And you understand that I'm going

17    to make you what we call a third-party custodian, which means

18    you're going to be responsible for making sure your brother

19    comes to court and he doesn't violate any conditions that I

20    impose.  Okay?

21    **MS. SOMKONGMANY:**  Yes, sir.

22    **THE COURT:**  And if he does violate any of the

23    conditions, it's your responsibility to inform Pretrial

24    Services that he's violated those conditions.

25    Obviously, I want to make sure that you make sure

1    that he doesn't violate the conditions.  Okay?

2        **(No audible response.)**

3            **THE COURT:**  Okay.  Thank you very much.

4            And if you -- if you would listen closely to the

5    conditions as I give them so that you can make sure that they

6    are also complied with by your brother.  And a copy of --of

7    what the conditions that I give, Mr. Macias can give you and

8    your brother a copy of that so you know those conditions.

9    Okay?

10        **(No audible response.)**

11            **THE COURT:**  Thank you very much.  Have a seat in the

12    courtroom.

13            In addition, sir, you are going to be -- you

14    cannot -- there is -- well, no travel outside of Harris County.

15        **(Pause in the proceeding.)**

16            **THE COURT:**  You are to avoid all contact with any co-

17    Defendant, any victim, any potential witness in this case.

18        **(Pause in the proceeding.)**

19            **THE COURT:**  You have to refrain from possessing a

20    firearm, destructive device, or other dangerous weapon.  No

21    excessive use of alcohol.  No possession of a narcotic drug or

22    other controlled substance, unless, of course, prescribed by a

23    doctor.

24            You have to submit to testing required by Pretrial

25    Service to determine whether you're using a prohibited

1  substance.  If ordered by Pretrial Services, you have to

2  participate in a program of in-patient or out-patient substance

3  abuse therapy.

4        I'm going to order that you have a GPS in an active

5  role positioning GPS, actually an ankle monitor.  And require

6  that you be subject to --

7        **(Pause in the proceeding.)**

8        **THE COURT:**  -- home detention.

9        Which means, that you're to be restricted to your

10  sister's residence at all times, except for employment,

11  education, religious services, medical, substance abuse, or

12  mental health treatment, attorney visits, court appearances, or

13  court-order obligations that was pre-approved by the Pretrial

14  Services.

15        So in other words, you can go to work.  But, you

16  know, you're not to go out running around, you know, not go out

17  to -- to restaurants, to drive around.  You're to stay at the

18  home, unless it's pre-approved.  And I cannot emphasize enough

19  pre-approved by Pretrial Services.

20        In addition, last but not least.  If you have any

21  contact with law enforcement, you're to report that contact to

22  law enforcement.

23        The example I always give is, if you happen to in a

24  car going to work, and a police officer pulls you over, even if

25  you didn't do anything wrong, make sure you're the one that

1    lets the Pretrial Services officer know.  They'll let law

2    enforcement call.

3            Do you understand those conditions as I explained

4    them to you?

5            **DEFENDANT SOMKONGMANY:**  Yes, sir.

6            **THE COURT:**  Any questions for me?

7            **DEFENDANT SOMKONGMANY:**  No, your Honor.

8            **THE COURT:**  Okay.  Before I go any further, anything

9    that I've forgotten, added, subtracted, thoughts from either

10   Pretrial Services, the Government, or the Defendant?

11           **MR. MACIAS:**  I -- no, your Honor.

12           **THE COURT:**  Okay.  Mr. Cusick?

13           **MR. CUSICK:**  No.

14           **THE COURT:**  Okay.  So I will get that paperwork to

15   Mr. Castro, my case manager.  And we will get that to you

16   immediately.  And hold on just -- okay.

17           Anything else for the record?

18       **(No response.)**

19           **THE COURT:**  Mr. Cusick?

20           **MR. CUSICK:**  Yes, your Honor.  Government moves for a

21   stay on the release order, pending review by the District

22   Court.

23           **THE COURT:**  Denied.

24           **MR. CUSICK:**  I'll also --

25           **THE COURT:**  Denied.

22

1          This -- this is not a close call.  And I did it

2     as -- well, in the defense of me, that the Government waited

3     until now to make that plea, okay.  I'm not going to keep him

4     over the weekend.  It is -- the law is abundantly clear on this

5     case and while you were absolutely free, in the other system,

6     actually encouraged to -- to appeal, either to the District

7     Court or whether the District Court of Appeals.  This is not

8     the case where I would stay my orders.

9          So I'm letting him out.  And -- and, obviously, that,

10    you know, rather you go to Judge Brown and we'll go from there.

11         Anything else we need to address today from the

12    Government?

13         **MR. CUSICK:**  No, your Honor.

14         **THE COURT:**  From the Defendant?

15         **MR. MACIAS:**  No, your Honor.

16         **THE COURT:**  Okay.  Thank you all very much.  I

17    appreciate it.  Everyone have a great weekend.

18         We're off the record.  Be safe.

19         **(This proceeding was adjourned at 11:28 a.m.)**

20

21

22

23

24

25

23

<u>CERTIFICATION</u>

1

2  I certify that the foregoing is a correct transcript from the

3  electronic sound recording of the proceedings in the above-

4  entitled matter.

5  _____/s/_*Cheryl L. Battaglia*_____          _____April 14, 2024_____

6          Transcriber                              Date

7  2:23-CR-029

8  04/03/24 - 04/14/24